MARC EVANS *v.* CHRISTINE M. TAYLOR
(AC 19341)

Lavery, C. J., and Flynn and Dupont, Js.

Submitted on briefs September 12—officially released November 20, 2001

*Christine M. Taylor,* pro se, the appellant (defendant), filed a brief.

*Patricia C. Reath,* for the appellee (plaintiff), filed a brief.

*Opinion*

FLYNN, J. The defendant, Christine M. Taylor, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Marc Evans. On appeal, the defendant claims that the court improperly (1) calculated child support payments, (2) exceeded its authority by ignoring the trial testimony of an expert witness, thereby adversely affecting the defendant's claim of intolerable cruelty, (3) refused to grant a dissolution on the grounds of intolerable cruelty, thereby affecting the basis on which property was distributed, and (4) failed to incorporate accumulated and unpaid pendente lite alimony in its final order of dissolution. We reverse in part the judgment of the trial court on the basis of the last issue only.

The following facts and procedural history are necessary for a proper resolution of the defendant's appeal. The parties were married in 1988. They have one child who was three years old at the time of the dissolution. The plaintiff commenced this dissolution action in 1995, claiming a breakdown in the marital relationship. The defendant filed a counterclaim for dissolution on the grounds of irretrievable breakdown and intolerable cruelty. Orders for pendente lite support were entered on February 14, 1997, by the court, *Moran, J.* Pursuant to those orders, the plaintiff was required to make monthly payments of $2800 to the defendant as unallocated alimony and child support. Payments were due on the fourteenth day of each month. The trial commenced in April, 1997, and proceeded, on various dates, until its completion in July, 1997. In June, 1997, the plaintiff filed a motion to modify the pendente lite orders. The court, *Hon. Margaret C. Driscoll,* judge trial referee, declined to hear that motion. Although the amount of the payments that had accrued under the February 14, 1997 pendente lite orders as of June, 1997, totaled $14,000, the plaintiff had made payments totaling only $5600. On September 4, 1997, and again on September 15, 1997, the defendant filed motions for contempt. Those motions were neither granted nor denied.

On November 25, 1997, the court rendered judgment dissolving the marriage of the parties after concluding that the marriage had broken down irretrievably. In its memorandum of decision, the court ordered the plaintiff to pay the sum of $113 per week, beginning December 2, 1997, for the support of the minor child. It did not, however, address in its memorandum of decision the issue of the unpaid arrearage of pendente lite support or cite the plaintiff for contempt. On December 5, 1997, the defendant filed a motion for reargument. That motion was denied.

# I

The defendant first claims that the court improperly calculated its order for child support. Specifically, the defendant claims that the support order was improper because the court had little credible evidence of the plaintiff's income from which it could properly make a determination as to the appropriate amount of child support. We disagree.

Before addressing the merits of the defendant's claims, we first set out the well settled standard of review applicable to a court's decision regarding financial orders. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Ludgin* v. *McGowan*, 64 Conn. App. 355, 357, 780 A.2d 198 (2001). With those principles in mind, we turn to the defendant's claim that the court improperly calculated child support.

"It is clear that a trial court must base . . . child support orders on the available net income of the parties." *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 202, 572 A.2d 1032 (1990). To aid in its determination of the appropriate amount of child support, the court had before it the following evidence: The testimony of the parties, the testimony of an expert who the defendant had hired to evaluate the plaintiff's business, the financial affidavits of both parties and the joint tax returns filed by the parties for the years 1993 through 1995, inclusive. Although the court noted that it was unclear whether the earnings that were reported by the plaintiff were his actual earnings,[1] it also noted that the

---

[1] The plaintiff filed three financial affidavits, which showed a significant drop in income within a relatively short period of time. The first financial affidavit, dated March, 1997, listed gross income as $697 per week. The

defendant had income from various investments that she did not include on her financial affidavit. Further, the court found that pursuant to the financial affidavit of the plaintiff, his "expenses" were, for the most part, all being paid, despite the fact that the total of those "expenses" exceeded the amount he had listed as "income," which led the court to conclude that the plaintiff's income was at least equal to that of his "expenses." In light of that situation, the court calculated the net income of each party using the same method; it substituted the amount listed as "expenses" on each party's financial affidavit for gross income and deducted the applicable payroll taxes from that amount to arrive at each party's net income.

On the basis of the information the court had before it and in light of the fact that neither party was completely forthcoming in reporting his or her income, we cannot say that the court was unreasonable in employing the methodology that it did to arrive at a net income figure for each party. Accordingly, we conclude that the court did not abuse its discretion in calculating the amount of child support to be paid by the plaintiff.

## II

The defendant next claims that the court improperly rejected her claim that the plaintiff subjected her to intolerable cruelty. Specifically, the defendant claims that the court exceeded its authority in disregarding her physician's expert testimony that the defendant's illness was caused by the abuse that she was subjected to by the plaintiff. She claims that the court could not properly have disregarded such testimony because the plaintiff failed to present any evidence to contradict or rebut that testimony. The defendant further claims that the court exceeded its authority in determining that her

---

second, dated April, 1997, listed gross income as $348.84 per week. The third, dated June, 1997, listed gross income as $125 per week.

hospitalization did not stem from the plaintiff's cruel treatment of her, but rather that it stemmed from an ongoing depression that may have been aggravated by the treatment that the defendant received from the plaintiff because that determination could not have been gleaned from any of the testimony that was presented at trial. Again, we disagree.

"The acceptance or rejection of the opinions of expert witnesses is a matter peculiarly within the province of the trier of fact and its determinations will be accorded great deference by this court." (Internal quotation marks omitted.) *Carter* v. *Carter*, 8 Conn. App. 356, 358, 512 A.2d 979 (1986). "In its consideration of the testimony of an expert witness, the trial court might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . .

"It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . including expert testimony, and can construe such evidence in a manner different from the parties' assertions." (Internal quotation marks omitted.) *State* v. *Alvarado*, 62 Conn. App. 102, 112, 773 A.2d 958, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). We conclude that the credibility and weight to be given to the testimony of the defendant's expert was solely within the province of the court. Further, "[d]espite the defendant's contention to the contrary, the trial court is not required to accept uncontradicted expert testimony." (Internal quotation marks omitted.) *Simard* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 690, 696, 772 A.2d 1137 (2001).

We conclude that the court was not required to credit the testimony of the defendant's physician simply because the plaintiff offered no evidence to the con-

trary. Rather, the court was entitled to credit that testimony in whole, in part or not at all.

Further, although the defendant claims that there is no basis in the record for the court's determination that the defendant's hospitalization was due to her ongoing depression, the record reveals that the defendant had a history of treatment for depression, occurring prior to her marriage to the plaintiff. Because we conclude that the court's finding that the defendant's illness was not caused by the plaintiff's treatment is supported by facts in the record and is not clearly erroneous, we will not disturb that determination.

## III

The defendant next claims that the court improperly failed to grant the dissolution on the ground of intolerable cruelty. Specifically, the defendant claims that the court seemed to imply that intolerable cruelty may only be established as a ground for divorce if the party making such a claim permanently departs from the marital home. Although we agree that intolerable cruelty can be proved without a permanent departure from the marital home, the court's conclusion that it was not proven on the facts of this case must stand.

"[I]ntolerable cruelty has a subjective as well as an objective significance. There must not only be proof of acts of cruelty . . . but proof that in their cumulative effect . . . they are intolerable in the sense of rendering the continuance of the marital relation unbearable by him [or her]." (Internal quotation marks omitted.) *Garrison* v. *Garrison*, 190 Conn. 173, 178–79, 460 A.2d 945 (1983).

"Whether intolerable cruelty exists or not in a particular case is ordinarily a conclusion of fact for the trier to draw." *Richards* v. *Richards*, 153 Conn. 407, 409, 216 A.2d 822 (1966). "Our standard of review regarding

factual findings of a trial court is limited. Such findings are binding on this court unless they are clearly erroneous in light of the evidence, the pleadings and the record as a whole." *Murray* v. *Murray*, 65 Conn. App. 90, 92–93, 781 A.2d 511, cert. denied, 258 Conn. 931, 783 A.2d 1029 (2001).

In its memorandum of decision, the court noted, on the basis of the testimony of the parties, that the marriage of the parties was troubled from the start and that each party believed that he or she was mistreated by the other. It also noted that although the defendant claimed that the plaintiff's treatment of her over the course of their seven year marriage was intolerable, she tolerated it by not moving from the marital home until her husband filed an action for dissolution, despite the fact that she had the financial means to do so.[2] Finally, the court noted that some of the difficulties in what was a stormy marriage, arose from the verbal abuse by the defendant toward the plaintiff. On the basis of those observations, the court stated that the defendant failed to prove her claim of intolerable cruelty.

On the basis of the record, we conclude that the court could reasonably have found that the defendant had failed to establish her claim of intolerable cruelty, and therefore it was not clearly erroneous for the court to reject intolerable cruelty as a ground for dissolution and instead grant the dissolution of the marriage on the ground of irretrievable breakdown.

## IV

Finally, the defendant claims that the court improperly failed to incorporate the pendente lite support arrearage in its final judgment of dissolution. We agree.

---

[2] During the trial, the defendant bought another house and moved out of the marital home.

"[L]ike unpaid installments of an alimony award entered at the time of dissolution, accrued and unpaid installments of alimony pendente lite are, in effect, debts which have become vested rights of property which the court cannot take away." (Internal quotation marks omitted.) *Papa* v. *Papa*, 55 Conn. App. 47, 53, 737 A.2d 953 (1999). "[W]here a final decree of divorce has been rendered, any *orders* regarding pendente lite alimony are merged in the final decree and thereafter, no independent action for contempt based on the temporary alimony order can be properly brought. Review may be made, however, of that part of a final order which fails to . . . incorporate an accumulated arrearage of pendente lite alimony." (Emphasis added.) *Tobey* v. *Tobey*, 165 Conn. 742, 745–46, 345 A.2d 21 (1974). "Indeed, it would be error for a trial court . . . to fail to incorporate an accumulated arrearage of pendente lite alimony in a final order granting dissolution." (Internal quotation marks omitted.) *Papa* v. *Papa*, supra, 55.

The defendant's claim in this case is controlled by our decision in *Elliott* v. *Elliott*, 14 Conn. App. 541, 541 A.2d 905 (1988). In *Elliott*, we held that the trial court's order, entered at the time of dissolution, forgiving a previously determined arrearage of pendente lite alimony, constituted a retroactive modification of the pendente lite order. Id., 545. We held that such a modification, when made at the time of dissolution, is impermissible pursuant to General Statutes § 46b-86,[3] which permits retroactive modification of alimony and support orders only during the predissolution period

---

[3] General Statutes § 46b-86 (a) provides in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party . . . ."

and only pursuant to a pending motion to modify.[4] Id.; see also *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 311–12, 733 A.2d 907 (1999). We explained in *Elliott* that "the purpose of alimony pendente lite is to provide a party with support during the pendency of the dissolution action. . . . Allowing a court to modify an award of alimony pendente lite retroactively at the time the dissolution is granted would frustrate that purpose because it would encourage spouses to delay making their alimony payments until the time of dissolution, hoping that the order for alimony pendente lite would be forgiven or changed at that time." (Citation omitted.) *Elliott* v. *Elliott*, supra, 545.

Here, although the court did not expressly forgive the arrearage of pendente lite support, it failed to include the arrearage in its judgment dissolving the marriage. The plaintiff claims that the court's failure to include the arrearage in its final order was reasonable because the defendant did not include an entry for any accrued arrearage on her financial affidavit and did not include a request for a finding of an arrearage in her claims for relief. Those documents were dated months before the memorandum of decision was issued. The defendant's financial affidavit was dated April 15, 1997, and her claims for relief and amended claims for relief were dated March 3, 1997, and July 31, 1997, respectively. The defendant's September, 1997 motions for contempt were filed before the court's November 25, 1997 memorandum of decision and were brought for the express purpose of enforcing the pendente lite orders.

We conclude that failure to include an arrearage in a final order of dissolution has the same effect on the party entitled to the pendente lite arrearage as it would

---

[4] The prohibition against retroactive modification of alimony or support orders applies with equal force to pendente lite orders. *Elliott* v. *Elliott*, supra, 14 Conn. App. 545.

have had if the court had expressly modified or forgiven the pendente lite order at the time of dissolution; it strips that party of a vested property right and constitutes an impermissible retroactive modification of the pendente lite orders in violation of § 46b-86. Even if it is assumed that the defendant was not stripped of a vested property right because she could again return to court and seek a judgment in the amount of the arrearage in an independent separate action, judicial economy concerns should prevail. It was improper for the court to omit the pendente lite arrearage in its final judgment of dissolution even though the defendant may not have specifically requested that in her claims for relief.

The plaintiff next claims that the defendant has failed to file an adequate record for review in that the record is inadequate to quantify the amount of the arrearage with any specificity. The plaintiff further claims that because the parties stipulated, through counsel, that any modification of the pendente lite order would be effective retroactively to June 24, 1997, the date that the plaintiff filed his motion to modify support, the stipulation agreement would have had some effect on the amount of the claimed arrearage. We do not agree.

The plaintiff does not dispute that he was required to make monthly payments of $2800 to the defendant pursuant to the February 14, 1997 pendente lite support order. Further, although the plaintiff filed a motion for a modification of pendente lite support, which, if it had been granted before the judgment of dissolution, would have related back to the date that it was filed, that motion never was granted. Accordingly, the February 14, 1997 support order remained in effect until the date that judgment was rendered dissolving the marriage. See *Tobey* v. *Tobey*, supra, 165 Conn. 745. The plaintiff admitted that he had paid a total of only $5600 to the defendant. The record is, therefore, adequate to deter-

mine the amount of the arrearage; the defendant is entitled to the pendente lite payments that accrued prior to the date of the judgment of dissolution, which in this case was November 25, 1997, less the $5600, and any additional payments arising from a wage execution that was signed by the court after the dissolution judgment.[5]

Finally, the plaintiff claims that the defendant failed to provide an adequate record for review because she failed to request an articulation of the reasons that the court did not include the arrearage in its final order dissolving the marriage. That claim also is without merit. Regardless of the reasons the court may have had for not including the arrearage in the final order of dissolution, "the effect was that the pendente lite order was [retroactively] modified [in violation of § 46b-86]." *Elliott* v. *Elliott*, supra, 14 Conn. App. 546. The arrearage was, therefore, improperly omitted.

The judgment is reversed insofar as it fails to include the arrearage of pendente lite support and the case is remanded for further proceedings to determine the amount of pendente lite support arrearage to be included in the judgment. In all other respects the judgment is affirmed.

In this opinion the other judges concurred.

---

[5] We note that the defendant's September 15, 1997 motion for contempt specifies the accrued arrearage as $16,800. We also note that on December 23, 1997, the court, *Hon. Margaret C. Driscoll*, judge trial referee, signed a wage execution that lists the total amount of arrearage at $22,513 as of December 8, 1997, which, if broken down, is the equivalent of eight months of pendente lite support and one month of postdissolution child support.