[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were mated in Westport, Connecticut on October 5, 1985 following a 30-day courtship. It was a third marriage for both parties. They have been living separate and apart since December 27, 1997. The parties have no minor children, however, the wife did have three children by a previous marriage each of whom has resided in the marital home at one time or another during the marriage.
The wife is 61 years of age and well educated. She has held a variety of positions mostly in the area of marketing, including a family corporation and more recently as a real estate broker. She describes herself as a hard worker, however, her income has varied widely during her career. She lives in a condominium in New York City which is owned by CT Page 1083 her. It is a small studio apartment. She suffers from a number of ailments including fibromyalgia which was diagnosed in early 1997. According to her testimony, this is very debilitating, and she is taking medication for it. Moreover, she has indicated that it greatly affects her ability to work on a full time basis.
The husband is 65 years of age and is a practicing attorney in Westport, Connecticut. He also suffers from a variety of health problems, the most significant of which is congestive heart failure. In addition, he has vertigo, worsening hearing, cataracts, difficulties with memory and concentration, as well as clinical depression. The testimony of his physician supports the husband's claim, specifically that he is under medication and that while stabilized, the condition will not improve. The more recent gross annual receipts from his law practice have been in the range between $100,000 and $124,000 per annum, out of which he reports ordinary income of about $23,000.
The husband brought to the marriage an interest in two homes in Westport one of which he stills owns, some cash, a vehicle, an interest in his father's estate as well as an interest in a real estate venture in Vermont. The total value of these assets was in excess of $850,000. The wife came to the marriage with an ownership in a home in Westport having a fair market value of approximately $450,000 together with a mortgage on it. Shortly after the marriage, the wife sold that property, and after the payment of debts, her net receipts were approximately $350,000. In part, she used the funds to purchase a condominium in New York City which she later sold and used a portion of the proceeds to pay for her current dwelling for $309,000. The balance of the proceeds, at that time amounting to approximately $75,000 was placed in escrow with her counsel. Her current condominium has a value of between $315,000 and $320,000 with a mortgage in the amount of $240,000 leaving an equity of $75,000 and $80,000. The common charges for that unit are in excess of $2000 per month.
More significantly the husband testified that he came to the marriage with little or no indebtedness and at the time of trial the debt had ballooned to in excess of $125,000. He indicated that this was in large measure due to his inability to maintain himself and her separately during the pendency of this action. At the time of the trial, there was an arrearage in his pendente lite alimony obligation of $900. The testimony of both parties was that the wife invested a total of no more than $20,000 to $30,000 in the marital pot and retained the rest for her use. The defendant testified that he paid for virtually all of the living expenses for the parties, including mortgages, taxes, food and most household bills. The wife's testimony corroborated this. In fact, with certain exceptions, for the most part, the parties have kept their CT Page 1084 finances separate since the beginning of the marriage.
With regard to the specific assets, at the time of the marriage the husband owned property on Duck Pond Road as well as Myrtle Avenue. The Myrtle Avenue property was rented to a tenant paying approximately $2500 per month. The parties agreed to renovate the Myrtle Avenue property and while that was progressing agreed to move into the Duck Pond Road. It was anticipated that it would take approximately six months, however, the stay lasted seven years. The husband testified that the wife liked the Myrtle Avenue property so much that she threatened to divorce him if he ever moved them from it. The Duck Pond Road home was sold in 1992 for $459,000, wit a portion of the net proceeds amounting to $250,000 being ploughed into renovations on the Myrtle Avenue property. However, the loss from the income from Duck Pond Road has had a dramatic impact on his cash flow. In connection with this current action, the wife did place a lis pendens on the Myrtle Avenue property.
The husband's father died in 1978 and established a trust naming the husband and his half brother as the ultimate beneficiaries. His father's second wife was named a life income beneficiary and she did not die until 1999. The half sister, (daughter of his father's second wife) has instituted litigation over claims against the trust which has not yet been distributed to the husband and his brother. The estimated value of Mr. Jacobson's interest in the trust, which includes cash and securities valued at $240,000 plus a house, were he to receive his full share is in excess of $120,000.
Throughout the marriage, the testimony of both parties seems to indicate that they kept their title to their major assets separate and apart. At first they shared a joint checking account, however, the wife, who testified and admitted she was a poor money manager, incurred some bank charges for overdrafts, and the husband canceled the account. The major exception to the separateness involved the wife's purchase of the first condominium unit in New York City. At that time, the wife placed the husband's name on the title. By her testimony, she indicated that the husband failed to cooperate with her at the time she was selling that unit and buy another and that she lost a very favorable opportunity to buy a larger condominium unit for less money. As a consequence she lost the opportunity to bank a substantial sum of money and blamed the husband for his unwillingness to cooperate. The current condominium is in her name alone.
In addition, the wife claims that she brought to the marriage certain items of personal property including home furnishings. The husband has conceded on the record that the wife may remove any items or personal property which she did bring to the marriage. In addition, the wife has CT Page 1085 agreed to return an item of jewelry which belonged to the husband's mother.
The wife cites as a cause of the breakdown of the marriage the husband's caustic and sarcastic wit at her expense throughout the marriage. She indicated that this got worse the longer they were mated. These displays were not only in private but also in public, which was corroborated by a witness for the wife. She also indicated that she felt there was lack of trust on the husband's part with regard to certain finances and that she had felt that they had an agreement that a portion of the Myrtle Avenue property would be placed in joint names. Needless to say the husband never placed her name on the title. For his part, the husband claims that he was extraordinarily supportive of her and her children, (particularly the two younger children) while they were growing up and residing in the marital home in Westport. In addition, he feels that he helped her out not only as lawyer through certain of her lawsuits, but also with financial assistance from time to time. In addition, he alluded to the fact that at the time of their marriage the wife presented herself as an active successful business person, but that she stopped working as soon as they were married. It is a particularly sad case of two mature persons who mated in haste and have repented at their leisure ever since.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-40, 46b-51, 46b-62, 46b-63, 46b-81, and 46b-82
of the Connecticut General Statutes, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample: evidence exists that both parties have contributed to said breakdown.
 4. That neither party has sought periodic alimony; that in arriving at its financial orders, the court has attached significant weight to the ages of the parties, as well as their health, their respective financial contributions to the marriage, and the fact that in light of the length of the marriage (i.e., at least 10 years) the wife shall have the option of receiving the spousal share of the husband's social security benefit at some time following the entry of this CT Page 1086 decree.
 5. That at the time of the marriage, according to his testimony, the husband had an interest in two residences located in Westport, Connecticut (i.e., Duck Pond Road and 96 Myrtle Avenue) having a combined value in excess of $850,000, as well as an interest in a limited partnership in Vermont, an established legal practice, together with miscellaneous personal property and home furnishings.
 6. That the wife brought to the marriage a residence located at Bayberry Lane, Westport, Connecticut having a fair market value of $450,000; that this asset was subsequently sold and the net proceeds, after the payment of certain debts, were invested in a cooperative apartment in New York; that this unit was subsequently sold and her current residence was purchased with a portion of the net proceeds; that the balance of the net proceeds were placed in escrow; that while the husband's name was placed on the title to the prior coop apartment, and while he made some financial contribution, his contribution was not significant; that the court found the wife's testimony to be credible to the effect that the husband's failure to cooperate in the sale of her prior coop apartment was spiteful and without good cause and resulted in a significant financial loss to her; that the wife was largely responsible for the acquisition, maintenance, and preservation of this asset; and that it is equitable and appropriate that the court should consider the husband's actions in making its financial orders and that the wife retain same free and clear of any claims by the husband.
 7. That the husband is the owner of certain real estate at 96 Myrtle Avenue, Westport, Connecticut; that he owned same at the time of the marriage; that the premises are used both as his residence and his office from which he operates his law practice; that the real estate has a fair market value of $700,000 against which lies a mortgage in the amount of $270,000 leaving an equity of $430,000; that the wife has made no significant contribution to the acquisition, maintenance, or preservation of this asset; and that it is equitable and appropriate that the husband retains this asset free and clear of any claims by the wife.
 8. That the wife purchased her present cooperative apartment in New York for $309,000; that there is a mortgage in the amount of $240,000 thereon; that the funds for the purchase can be directly traced to assets which she owned prior to the marriage; that it has a current fair market value of between $315,000 and $320,000; that the husband made some contribution to the preservation of this asset; that it is her principal residence; and that it equitable and appropriate that CT Page 1087 she retains title to I same, subject to the existing mortgage, free and clear of any claims by the husband.
 9. That the husband obtained an interest in a certain real estate venture in the town of Winhall, Vermont, on or about 1969 and known as "Golden Triangle Jacobson LTD"; that the husband made no initial monetary contribution thereto; that said property is currently on the market for sale at $135,000; that prior to the husband receiving any payment, the initial investors, a purchase money mortgage holder, and the real estate broker must be paid; that the total of said obligations is in excess of I the listing price; that the husband's interest was obtained prior to the marriage of the parties and the wife has made no contribution to the acquisition, maintenance, or preservation of same; and that it is equitable and appropriate that the husband retains his interest in same free and clear of any claims by the wife.
 10. That the husband's late father established the Ben Jacobson Trust naming his then wife life income beneficiary and his brother and him as residual beneficiaries; that the life income beneficiary died in 1999; that the husband's interest therein is vested; the wife has made no contribution to the acquisition, maintenance, and preservation of same; and that it is equitable and appropriate that the husband retains his interest therein free and clear of any claims by the wife.
 11. That pursuant to an order of this court dated September 20, 2002 (Harrigan, J.), the court made a determination of arrearage of pendente lite alimony and ordered the husband to pay to the wife the sum of $900.00 on or before October 13, 2000; and that said sum remains outstanding as of the date hereof Evans v. Taylor, 67 Conn. App. 108, 117-118 (2001).
 12. That the husband is currently covered by Medicare and a "medigap" health insurance policy; that the wife is covered by health insurance through her current employer; that no credible evidence was introduced as to whether or not the husband is eligible to receive continuation coverage under the wife's policy pursuant to state and federal law (§ 38a-538 C.G.S. and 29 U.S.C. § 1161 et. seq.); and that it is equitable and appropriate that the wife cooperates with the husband in obtaining information regarding the policy and the obtaining of coverage under same if he shall so choose.
 13. That the wife has ample liquid assets; that it is equitable and appropriate that the wife pay her own legal fees incurred in CT Page 1088 connection with this action; and that the payment of her legal fees will not undermine the other orders of this court. Koizim v. Koizim, 181 Conn. 492 (1980); Maguire v. Maguire, 222 Conn. 32 (1992).
 ORDER
IT IS HEREBY ORDERED THAT:
 1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmated.
 2. The husband shall pay to the wife a lump sum in the amount of $50,000 as follows: $5,000 on or before March 1, 2002, and thereafter the sum of $500.00 per month commencing April 1, 2002, and monthly thereafter until the same shall be paid in full, or until the death of the wife, whichever shall sooner occur. Said lump sum shall be nonmodifiable by either party, and in the event that the husband shall predecease the wife, the remaining balance shall be a charge against his estate. It is the intention of this court that these sums shall not constitute income to the wife and shall not be deductible by the husband.
 3. The husband shall have exclusive possession of the real property located at 96 Myrtle Avenue, Westport, Connecticut, and shall retain title to same free and clear of any claims of the wife, subject to any existing mortgages and liens thereon. Within two (2) weeks from the date hereof, the wife shall prepare and file, at her sole expense, a properly executed release of the Lis Pendens as on file in the land records of the Town of Westport, and shall at the same time provide counsel for the husband with satisfactory proof thereof.
 4. The wife shall have exclusive possession of the real property located at 171 East 84th Street, New York, New York, and shall retain title to same free and clear of any claims of the husband, subject to any existing mortgages and liens thereon.
5. Personal property shall be divided as follows:
 A. Except as otherwise set forth herein, each party shall retain ownership of all items of clothing and personal effects, as well as home furnishings now in their possession free and clear of any claims by the other.
 B. The husband shall be entitled to keep the automobiles which he is currently driving (whether leased or owned) free and clear of any claims by the wife, and she shall cooperate with him regarding the CT Page 1089 execution of any documentation necessary to transfer and/or register same.
C. Miscellaneous Personal Property:
 (1) Ben Jacobson Trust: The husband shall be entitled to retain his interest in the Ben Jacobson Trust established by his father free and clear of any claims by the wife.
 (2) Personal property @ 96 Myrtle Avenue: The wife shall be entitled to the items which she brought to the marriage. The balance of the property and furnishings, including the office furniture and equipment, shall belong to the husband free and clear of any claims by the wife. Any disputes in this regard shall be first referred to the Family Relations Office for mediation, and the court shall retain jurisdiction.
 (3) The wife shall return the "gold mesh bracelet with the lion's head, rubies and diamonds" to the husband within two (2) weeks from the date hereof
 (4) Each party shall be entitled to retain the balances in their respective savings, checking, and money market accounts free and clear of any claims by the other.
 (5) Golden Triangle: The husband shall be entitled to retain his interest in the entity "Golden Triangle Paul Jacobson LTD" free and clear of any claims by the wife.
 (6) The husband and wife shall retain title to his or her IRA free and clear of any claims by the other.
 (7) The wife shall be entitled to retain any stocks, bonds, or other securities in her e-trade account free and clear of any claims by the husband.
 (8) The husband shall be entitled to retain any stocks, bonds, or other securities, including 1000 shares of restricted stock in Wiltek, Inc., free and clear of any claims by the wife.
 (9) The wife shall be entitled to retain the balance of the escrow funds currently held by Attorney O'Sullivan free and clear of any claims by the husband.
 (10) The husband shall be entitled to retain ownership of his Metlife and John Hancock Life insurance policies, together with any CT Page 1090 cash value and subject to any outstanding loans, free and clear of any claims by the wife.
 (11) 1998 tax refund: Any state and federal tax refund on the joint income tax return for 1998 shall be divided 1/3rd to the wife and 2/3rds to the husband.
 6. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
 7. The husband shall pay to the wife the sum of $900.00 within thirty (30) days from the date hereof, which sum represents the arrearage as determined by this court on September 20, 2001.
 8. The wife shall promptly notify her employer as to the change of marital status and shall cooperate with the husband in obtaining such continuation health insurance coverage as may be available and as provided by state and federal law. The husband shall be responsible for the payment of any premiums due for such coverage.
 9. The Court hereby restores the former mated name of the wife: SUSAN WESTRING.
 10. Each party shall be responsible for their respective legal fees and costs incurred in connection with this action.
THE COURT
 ___________________ SHAY, J.