[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Clinton, New Jersey on June 7, 1986. They are the parents of three minor children, Victoria Kaitlin Foley, born January 24, 1989; Timothy Ryan Foley, born April 17, 1990; and Delaney Taylor Foley, born February 8, 1993. The parties separated for a time in November 1996 and for a final time in 1998. The children live with the Plaintiff ("wife") in the family home on 49 Quail Ridge Road, Wilton, Connecticut. The husband lives in a separate dwelling which he purchased prior to the filing of the divorce, also in Wilton, at 32 Wilton Hunt Lane. The two younger children of the marriage have dyslexia and require extra tutoring and help with their studies. Prior to the close of the evidence, the parties entered a stipulation with regard to visitation CT Page 3487 dated September 7, 2001, and they also stipulated that sole custody of the minor children could be awarded to the mother that she could relocate with the children to the Denver, Colorado area.
The wife is 41 years old and in good health. She received a Bachelor of Arts from Denison University in 1982. She worked at Xerox in the Marketing Department from 1984 to 1991 with some time off for the birth of their first child. The parties first met there. The wife was apparently very successful at her work, and by the time she left following the birth of their second child, she had been promoted to Sales Manager. At one point her earnings were comparable to that of her husband. She testified that she intends to go back to work sometime in the future, but that she has no immediate plans to do so.
The husband is 44 years old and is also in good health. He received his degree from Ohio Wesleyan University in 1979. He has held a succession of positions mostly in marketing and sales. Like the wife, the husband began at Xerox, worked for a short period of time at Citibank and then joined the Gartner Group ("Gartner"). In 1994 he left Gartner for a short period of time and joined Real Decisions (a Gartner affiliate), and he then joined Scient and was later laid off. He was rehired by Gartner where he is currently employed. He works with a base salary and a commission. Over the course of his career his highest earnings were approximately $400,000 per annum, including bonus and commissions. Currently he receives $150,000 per annum base salary plus commissions. Commissions are accrued to his account, but they are not paid to him until Gartner is in receipt of payment by the client.
The principal remaining assets of the parties are the family home at Quail Ridge, Wilton and the husband's home at Wilton Hunt. The Quail Ridge property was purchased in 1991 for $425,000. They used a loan from the husband's father in the amount of $50,000 (which was later repaid), a $225,000 bank mortgage, and the net proceeds from a succession of houses that the parties owned throughout their marriage commencing with their starter home in New Jersey. The wife believes the fair market value of the property to be $540,000.00. However, the husband offered appraisal testimony and a report by Castiglia Associates which placed the value at $600,000.00. The court finds the latter to be more credible.
The husband purchased his home on July 7, 1998, with the agreement of the wife. He placed 10% down and borrowed approximately $350,000.00 against the margin account of the parties, and later obtained a conventional mortgage. The current fair market value of this property is also $600,000.
In addition, when the husband was first employed by Gartner, the CT Page 3488 corporation went public. At that time, the husband was given 4,852 shares. These have since doubled and redoubled over time, and together with the exercise of options, eventually accumulated to approximately 60,000 shares, which at its high point was selling for $42.00 a share for a total value of more than $2,000,000.00. The husband testified that throughout the marriage his philosophy was to "live on his salary." However, starting in 1995, the parties began to borrow against their Gartner stock by taking margin loans to make purchases large and small, which ultimately had to be repaid through the sale of the stock itself. At one point during the pendency of this action, they sold approximately $850,000.00 of Gartner stock. The wife kept $200,000.00 as an advance distribution of marital property, the husband a like amount, $50,000 was deposited in the joint checking account, and $400,000.00 was placed in escrow. As of a time shortly before the trial, the husband still had approximately half of his monies from the sale. The wife spent substantially all of her share. Also, approximately $240,000.00 of the escrow monies were to be applied to the taxes resulting from the sale of the stock. The combination of these sales and distributions, together with the falling share prices have eliminated this asset.
The husband received 980 stock options from Scient which, at the time of trial were without value. He has also received 9,000 Gartner options after rejoining the company following the separation of the parties.
The trial, which was conducted over eight days, during which the parties were extraordinarily contentious, involved a variety of issues from visitation to finances. For both parties there was simply just not enough money to go around. In September 2001, the court modified the existing pendente lite order and entered new orders that the husband pay to the wife $6,000 per month as unallocated alimony and child support, together with 25% of his gross bonus and commissions.
The wife testified that the marriage broke down because the husband basically distanced himself from the family and did not participate in the children's activities. She stressed her inability to communicate with the husband, together with allegations of his problem drinking, which she said began early in the marriage. The husband testified that he stopped drinking completely in 1997, and that if he was distant, it may very well be a product of his own parents divorce when he was a young man. He further testified that the wife made him feel "invisible" and like a "nonperson." However, what came through to this court very clearly was the fact that each party had very different philosophies with regard to family finances. The husband testified that for a long time the wife's spending from the margin account, particularly when he was away on business, was out of control and a large bone of contention. The husband's financial success has come at a price with regard to his CT Page 3489 familial relationship, with the added complication that this very financial success has also whetted the wife's appetite for the fruits thereof, and her desire that they continue at the same level post dissolution — an understandable but unrealistic expectation. What started out as a relatively amicable separation has deteriorated into an uncivil brawl.
The case took far to longer to try than was warranted by the assets involved. The court ascribes the length of the trial to the palpable hostility between the parties, particularly by the wife toward the husband. They had great difficulty remaining civil to one another. The wife is so obsessed with being right, and as the court suspects, punishing the husband as well, that she seems incapable of reaching any practical resolution of even the simplest problem. The court is particularly concerned with regard to the way parties deal with one another and with the effect this behavior has upon the children. In fact, it became clear to the court that the children have not only sensed the conflict, they are also very likely using it to manipulate the situation. As an example, the wife testified that while she verbally encourages the children to visit with their father, she said that she has told them that she would not force them to go with him, and thus unfairly leaves the onus on them. For his part, the husband appears to have taken the path of least resistence and avoids any contact with the wife. Since power abhors a vacuum, this mutual abdication of parental responsibility has left the children, in particular the oldest, in a position to step into the void. In addition, the situation if left to continue will certainly result in at least the partial alienation of the children from their father. These children deserve better. But for the yeoman's efforts of the attorney for the minor children, the court feels that there would be no meaningful visitation with the father. He is the unsung hero in this melodrama, and the court hopes that the children, if not the parties themselves, will one day come to appreciate his contributions.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and CT Page 3490 that ample evidence exists that both parties have contributed to said breakdown. HOWEVER, the court specifically finds that, based upon the testimony of both parties and the court's observation of their demeanor during eight days of trial, the wife's inability and/or failure and/or unwillingness to communicate with the husband in a constructive and conciliatory manner has been and will continue to be destructive of the relationship which, at a bare minimum, they must maintain for the benefit of the minor children, and which is and will continue to be harmful to the children.
4. That based upon the base income of the husband, the presumptive basic child support is $617.00 per week; and that the husband's share is $610.00.
5. That the fair market value of the real estate located at 49 Quail Ridge Rd., Wilton, Connecticut is $600,000; that the title to same is currently in the joint names of the husband and wife; that there is an existing first mortgage in the amount of approximately $205,000; and that there is net equity of $395,000.
6. That the fair market value of the real estate located at 32 Wilton Hunt, Wilton, Connecticut is $600,000; that the title to same is currently in the sole name of the husband; that there is an existing first mortgage in the amount of approximately $124,000; and that there is net equity of $476,000.
7. That throughout the marriage, until their separation, both parties made significant contributions to the acquisition, maintenance, and preservation of the family assets, including the real estate and retirement assets; that there has been a lengthy period of separation between the parties; and that it is equitable and appropriate that the court take these factors into consideration in making the financial orders.
8. That the parties have stipulated that the wife shall have sole custody of the three minor children and that she and the children may move to the Denver, Colorado area.
9. That pendente lite issues, including allegations of contempt, were the subject of separate hearings prior to the trial of this matter on at least three separate occasions, including February 20, 2001, February 26, 2001, and May 14, 2001; that the wife made certain expenditures on behalf of the children, in particular regarding the Wilton Riding Club, and for the repair of the family home; and that it is equitable and appropriate that the court take these into consideration when entering financial orders. Evans v. Taylor, 67 Conn. App. 108 (2001); Milbauer v.CT Page 3491Milbauer, 54 Conn. App. 304 (1999).
10. That the wife has a demonstrated earning capacity of at least $50,000 based upon her previous work experience, health, and education; and that while it may not be appropriate for her to work full time outside of the home at this time due to her child care responsibilities, it is equitable and appropriate that the court take her earning capacity into account in some measure, along with her health and age, in fashioning its financial orders, inter alia, the award of time-limited alimony.
11. That both parties have requested the court to enter an unallocated alimony and child support order; that the court has declined to do so; and that the court in the exercise of its equitable powers has entered appropriate financial orders under all the circumstances. Porter v.Porter, 61 Conn. App. 791, 797-98 (2001).
12. That based upon eight days of testimony and the evidence before it, the court finds that there is virtually a total breakdown in communication between the parties and that they are incapable of resolving their differences on child related issues in an appropriate manner; that it is in the best interest of the minor children that theparents receive some guidance and assistance in learning how toeffectively and appropriately communicate and interact with each otherfor the benefit of the children; that they be required to work with a private counselor for a period not to exceed one year with the specific goal of improving the communication between them and to develop appropriate and effective conflict resolution skills; and that it is equitable and appropriate that the cost of same be borne equally by the parties.
13. That the attorney's fees incurred by the wife are fair and reasonable under the circumstances; that the size of the fees are due in part to the contentiousness of the parties and the wife's unrealistic expectations throughout; that to require the wife, who currently has the responsibility of caring for the three minor children on a day to day basis, to pay these fees entirely from her portion of the marital assets awarded to her by virtue of this Memorandum of Decision would undermine the purposes of same; and that it would be fair and equitable for the husband to pay a portion of same. Maguire v. Maguire, 222 Conn. 32
(1992).
14. That the fees incurred by the attorney for the minor children through and including November 9, 2001 are fair and reasonable; that an additional sum of $500.00 for services rendered through November 30, 2001 is also fair and reasonable; and that it is equitable and appropriate CT Page 3492 that both parties contribute to the payment of the outstanding balance of same in the amount of $9,190.00.
15. That during the pendency of this action, the parties each took an advance against their share of the marital assets in the amount of $200,000; and that it is equitable and appropriate that the court take this into consideration in the division of the remaining marital assets.
16. That on or about March 1, 2001, the husband has been granted 9,000 stock options from his present employer, Gartner Group; that said options were granted subsequent to the separation of the parties in 1998; that the wife's contribution to the acquisition, maintenance, and preservation thereof has been de minimus; and that it is equitable and appropriate that the husband be entitled to retain same free and clear of any claims by the wife.
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. The court has reviewed the Proposed Orders (#236.10) of custody, visitation, and related matters as drafted by the attorney for the minor children as on file with this court, which the court finds to be in the best interests of the minor children, orders them to be made a part of the court file, and incorporates them herein by reference.
3. Commencing April 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $3000.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or March 31, 2014, whichever shall sooner occur.
In addition, commencing April 1, 2002, for so long as he has an outstanding alimony obligation to the wife, within two (2) weeks after receipt by the husband of any gross additional cash compensation from his employment (including but not limited to any bonus, commission, or commission override), the husband shall pay to the wife 30% of such gross additional cash compensation in excess of $150,000 per year up to and including $400,000, and 20% of the next $100,000 of such gross additional cash compensation in any calendar year, as and for periodic unallocated alimony and support, until the death of either party, the remarriage of the wife, or March 31, 2014, whichever shall sooner occur. Meaning and intending by this order that future alimony shall be based upon the first $500,000 of the husband's cash compensation from employment, and that all CT Page 3493 earnings in excess thereof shall not be subject to alimony. The husband shall provide satisfactory evidence to the wife of this additional cash compensation six months from the date of this order and every six months thereafter so long as he has an alimony obligation hereunder.
Pursuant to General Statutes § 46b-86 (a) the term of alimony shallnot be modifiable by either party.
4. Commencing April 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $3000.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining children shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct, and in like manner at such time as the next oldest child shall reach the age of eighteen years. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to General Statutes § 46b-84 (b).
In addition to the sums set forth above, as and for additional child support, the husband shall contribute to the normal, customary, and reasonable extracurricular activities of the minor children, as follows:
A. One-half of the activity fees, lessons, clothing, and equipment of the daughter Victoria Kaitlin and/or the other minor children for the horse "Tigger" (including dues and board at the Wilton Riding Club), for a total contribution not to exceed $2,500.00 per year, and any sums in excess thereof shall be the sole responsibility of the wife;
B. One-half of any sports fees and equipment, music lessons and equipment, and summer camp for each of the children up to and including the summer prior to their senior year of high school in an amount for a total contribution not to exceed $750.00 per year per child, and any sums in excess of this amount shall be divided by the parties 25% to the husband and 75% to the wife; and
C. One-half of any tutoring and testing expenses for the two younger children as may be recommended by their respective schools.
5. As to the jointly-owned real estate at 49 Quail Ridge Road, Wilton, Connecticut, within thirty (30) days from the date hereof, the husband shall convey his interest therein to the wife by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the wife shall have exclusive possession of the real CT Page 3494 estate and shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the husband harmless from any further liability thereunder. If applicable, within two (2) weeks from the date hereof, the husband shall prepare and file, at hissole expense, a properly executed release of the Lis Pendens as on file in the land records of the Town of Wilton, and shall at the same time provide counsel for the wife with satisfactory proof thereof.
6. The husband shall have exclusive possession of the real property located at 32 Wilton Hunt, Wilton, Connecticut, and he and shall retain title to same free and clear of any claims of the wife, subject to any existing mortgages and liens thereon. If applicable, within two (2) weeks from the date hereof, the wife shall prepare and file, at her soleexpense, a properly executed release of the Lis Pendens as on file in the land records of the Town of Wilton, and shall at the same time provide counsel for the husband with satisfactory proof thereof.
7. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. During the pendency of this matter, the husband removed certain household furnishings and personal property from the family home. Except as set forth herein, the remaining home furnishings in the Quail Ridge premises shall be the property of the wife free and clear of any further claims by the husband. The husband shall be entitled to the following: his photo album of him and the children, soccer coach plaques, his personal property in the attic, his music albums, camera lenses (AE-1) and strap, and the chicken rotisserie cooker. By stipulation of the husband in court, the wife shall be entitled to the sports books authored by her father. In addition, the wife is specifically awarded all china and crystal sets at the Quail Ridge property. The husband shall have access to the Quail Ridge property on a mutually agreeable Saturday or Sunday within the following thirty (30) days for a period not to exceed five (5) hours in order to remove his property.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
D. The wife shall be entitled to keep the Prudential (2) and Citigroup IRA's standing in her name, free and clear of any claims by the husband.
E. The husband shall be entitled to keep the Prudential IRA standing in CT Page 3495 his name, free and clear of any claims by the wife.
F. The current balance of the Alex Brown Co. account shall be divided as follows:
35% to the husband and 65% to the wife.
G. The joint Prudential account (securities) #BNJ-000792-4 shall be divided 40% to the husband and 60% to the wife.
H. The husband shall be entitled to keep the cash surrender value of his Northwestern Mutual life insurance free and clear of any claims by the wife.
I. The husband shall be entitled to keep the Scient 401K Plan and ESPP stock and the Gartner stock options (including any fully or partially exercised options, stock, or the proceeds therefrom) free and clear of any claims by the wife.
J. Except as otherwise set forth herein, each party shall be entitled to the balances in their respective checking, savings, and money market accounts, free and clear of any claims by the other.
K. The current balance of the escrow funds (approximately $6,000.00) shall first be applied to the outstanding balance of any fees to Dr. Jeffrey vonKohorn, and the remaining balance, if any, shall be applied toward the present and future tutoring expenses for the two younger children.
8. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law. The wife shall be responsible for the payment of any premiums due for such coverage.
9. The husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 50% by the husband and 50% by the wife. The provisions of General Statutes § 46b-84 (e) shall apply.
10. The husband shall maintain a portion of the existing Northwestern Mutual life insurance policies in the amount of $300,000, and shall name the children as equal beneficiaries thereof for so long as he has an obligation to pay child support under the terms of this decree. In CT Page 3496 addition, the husband shall maintain a portion of the existing Northwestern Mutual life insurance policies in the amount of $200,000, and shall name the wife as beneficiary thereof for so long as he has an obligation to pay alimony under the terms of this decree. The husband shall not borrow against the cash value of any policy so long as this would result in a reduction of the face amount below that required hereunder.
11. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
12. Effective as of April 1, 2002, the then balance of the Savings and Investment Plan ("Plan") of the husband through his employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the husband at the husband's sole cost, 40% to the husband and 60% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
13. The husband shall be liable for the payment of his legal fees and costs incurred in this action. Within thirty (30) days from the date hereof, the husband shall pay directly to the law firm of Tyler, Cooper, Alcorn, LLP the sum of $25,000 toward the attorney fees of the wife, and the wife shall be responsible for the balance of her fees. Within thirty (30) days from the date hereof, each of the parties shall pay a portion of the balance of the attorney fees of Kirk Bennett, Esq., as follows: husband $6,690.00 and wife $2,500.00.
14. Commencing with the tax year 2001 and thereafter, the husband shall be entitled to the tax exemption for the minor child Victoria Kaitlin, and the wife shall be entitled to the exemption for the minor children Timothy and Delaney. Each shall promptly execute the necessary documentation and deliver same in a timely manner to the other for filing with the IRS and/or state taxing authority on an annual basis.
15. Pursuant to General Statutes § 46b-56 (g), for a period not to exceed one (1) year from the date of this order, both parties shall meet CT Page 3497 with Dr. Jeffrey vonKohorn, or other mutually acceptable counselor, on aschedule determined by him, but not less frequently than once per month, for the sole purpose of learning how to (a) effectively and appropriately communicate and interact with each other, as well as (b) resolve their conflicts as they may arise, for the benefit of the children. The cost of these sessions shall be borne equally by the parties. These sessions areto be considered separate and distinct from an other counseling and/ortreatment the parties and/or the minor children are currentlyparticipating in and will continue to do so.
16. Within thirty (30) days from the date of this order, the husband shall pay to the wife the sum of $4000.00 as and for a partial reimbursement to her for certain family expenditures, including the Wilton Riding Club and for well/pump repairs for the premises at 49 Quail Ridge pendente lite.
17. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony and child support orders.
THE COURT
SHAY, J.
FA-98-0168258 S SUPERIOR COURT
CHRISTINA FOLEY J. D. OF STAMFORD/NORWALK
v. AT STAMFORD
JOHN B. FOLEY NOVEMBER 29, 2001
 PROPOSED ORDERS
1. The parties shall continue in counseling with Dr. Jeffrey vonKohorn until the court issues its memorandum of decision in this matter. The frequency and duration of counseling sessions shall be at the sole discretion of Dr. vonKohorn. Each party shall pay for their respective sessions; the cost of any joint sessions shall be shared equally by the parties. Counsel for the minor children shall, through contact with Dr. vonKohorn, monitor the situation to ensure that appointments are kept and that counseling is not unilaterally terminated by either of the parties. CT Page 3498
 2. In the interests of providing continuity and stability for the children, alteration of the following visitation schedule is strongly discouraged. Any party wishing to alter his or her time with the children must provide the other with at least thirty six (36) hours notice of his or her intention to do so. If either parent is unable to be with the children at his or her designated time, that parent shall be responsible for making and, if necessary, paying for appropriate care for the children.
 3. The plaintiff shall drop off the children at the commencement of visitation at the home of the defendant, and the defendant shall drop them off at the home of the plaintiff at its conclusion. This arrangement may be changed by the mutual consent of the parties so as not to disrupt the activities of the children.
 4. The defendant shall have visitation with the minor children as follows: 1st week — Children are with their father from approximately 6:00 p. m. Friday to approximately 6:00 p. m. Sunday, (9:00 p. m. during the summer).
Attached per Judges order.
 2nd week — Children are with their father from approximately 6:00 p. m. Friday to approximately 6:00 p. m. Saturday.
 3rd week — Children are with their mother; the Wednesday before this week-end, the children shall be with their father from 5:30 p. m. through 8:30 p. m. (overnight optional during the summer), with the father ensuring that the children are fed and, to the extent practicable, that their homework is completed.
 If the father's full week-end occurs during a three day week-end (e.g. Columbus Day, Veteran's Day) the father shall have the children through Monday at 6:00 p. m
In addition, the father shall have two weeks vacation time during the summer with the children, CT Page 3499 consecutively or non-consecutively. He shall notify the mother, in writing, by May 1st of each year of his intended weeks.
 The mother shall also have two weeks vacation time during the summer with the children, consecutively or non-consecutively. She shall notify the father, in writing, by May 1st of each year of her intended weeks.
 The parties shall alternate the children's President's week-end/winter recess from school. The father shall have the children in odd numbered years: the mother shall have the children in even numbered years.
 The parties shall alternate the children's Spring school recess. The father shall have the children in even numbered years; the mother shall have the children in odd numbered years.
 The father shall have the children for one day and overnight (but not Sunday) during their Thanksgiving vacation.
 The father shall have the children for one day and overnight during their Christmas recess from school, (in addition to New Year's Eve/Day, see below).
 The parties shall alternate the New Year's Eve/Day holiday. The mother shall have the children December 31, 2001 (into January 1, 2002) and in odd numbered New Year's Eves thereafter; the father shall have the children December 31, 2002 (into January 1, 2003) and in even numbered New Year's Eves thereafter.
 The father shall have the children for one day and overnight (but not Sunday) during their Easter recess from school.
 The children shall spend Father's Day with their father and Mother's Day with their mother.
 The parties will share time with the children during each of the children's birthdays.
5. The parties shall confer with each other to reach CT Page 3500 mutually satisfactory agreements on all major issues affecting the children including, but not limited to, choice of schools; extra-curricular activities; camp; medical, dental or psychological treatment; vacations; trips, and child care. In the event the parties cannot agree, the mother will have the final decision making power. However, the mother's decision will not serve to automatically increase the father's financial obligations as ordered by the court.
 6. Neither party shall do anything which may estrange the children from the other or hamper the natural development of their love for both parents.
 7. In the event of the illness or personal injury of one of the children, the first party to learn of such illness or injury shall notify the other immediately and each party shall keep the other informed at all times of the whereabouts of the child. During any illness or accident, both parties shall have the right of reasonable visitation to see the child in addition to that earlier set forth.
 8. The wife shall be notified at all times of the children's whereabouts and the telephone number where they may be reached when with the husband and the husband shall be notified at all times of the children's whereabouts and the telephone number where they may be reached when with the wife.
 9. Each of the parties will furnish to the others copies of any reports from third parties concerning the health, education and welfare of the children and each party is authorized to receive copies directly from any third party concerning the children's health, education and welfare.
 10. Each party shall have reasonable access to the children while they are with the other party including free access by mail and free access by telephone during reasonable hours of the day and evening, not more than once daily.
11. The parties have agreed, and it is so ordered, that the plaintiff shall have sole custody of the minor children, subject to Paragraph 5 herein. CT Page 3501
 12. The parties have further agreed, and it is so ordered, that the plaintiff may relocate with the minor children to the Denver, Colorado area. The plaintiff may not relocate with the minor children to any other location without the consent of the defendant or further order of this court. The plaintiff shall notify the defendant of her intention to relocate ninety (90) days in advance of any proposed relocation.
Respectfully submitted,
Kirk A. Bennett Counseler the minor children