KENNETH W. CLARK *v.* MARY ANN CLARK
(AC 31527)

Bishop, Beach and Flynn, Js.

Argued October 21, 2010—officially released March 8, 2011

*Mary Ann Clark,* pro se, the appellant (defendant).

*Kenneth W. Clark,* pro se, the appellee (plaintiff).

*Sandra P. Lax,* for the minor children.

### Opinion

BISHOP, J. The defendant, Mary Ann Clark, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Kenneth W. Clark, and entering

related financial orders. On appeal, the defendant claims that the court (1) should have ordered that the minor child with special needs continue to receive treatment in the New York City area or, in the alternative, that the court should have awarded her the Florida home so that the child could receive more affordable treatment in Florida, (2) failed to allocate expenses for the special needs child in abrogation of the child support guidelines, (3) should have ordered that the plaintiff pay 90 percent of the fees incurred for the guardian ad litem and the attorney for the minor children, and (4) failed to include or to address arrearages found by the court, pendente lite.[1] We affirm in part and reverse in part the judgment of the trial court.

The plaintiff commenced this marital dissolution action in June, 2006. Following a trial, the court, by memorandum of decision filed August 18, 2009, dissolved the parties' marriage. The parties have two minor children, one of whom has special needs. The court awarded sole custody of the parties' two children to the defendant and ordered the plaintiff to pay the defendant unallocated alimony and child support in the amount of $5000 per month. The court ordered, inter alia, that the plaintiff maintain health insurance for the children at his expense so long as it was available through his employer and that a qualified domestic relations order (QDRO)[2] be prepared so that the defendant would be

---

[1] The defendant also claims that the court should have issued an order regarding the payment of the parties' joint liabilities. In her brief, however, the defendant fails to enumerate those liabilities. In this regard, the defendant's brief is inadequate. Accordingly, we decline to review this claim. See *Thompson* v. *Rhodes*, 125 Conn. App. 649, 651, 10 A.3d 537 (2010).

[2] "A QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq." (Internal quotation marks omitted.) *Cifaldi* v. *Cifaldi*, 118 Conn. App. 325, 327 n.1, 983 A.2d 293 (2009).

reimbursed directly by the insurance provider for medical expenses incurred on behalf of the children.[3] The court also ordered the parties to list for sale their marital home in Greenwich and another property they owned in Boca Raton, Florida, no later than August 30, 2009. The net proceeds of the sales, if any, were to be divided 65 percent to the defendant and 35 percent to the plaintiff. The court stated that "[t]he net proceeds shall be determined after the following distributions from the sale price of each property: broker's commissions, reasonable attorney's fees, governmental fees (to include any conveyance taxes), customary closing costs and adjustments, any capital gains arising out of sale (held in escrow, if necessary), payment of the outstanding existing mortgages on said properties." The court ordered that the parties would share equally the obligation to pay the fees of the attorney for the minor children in the amount of $175,691.24, and the fees of the guardian ad litem in the amount of $8800, to be paid from the proceeds of the sale of the parties' real estate prior to the parties receiving their respective shares. The plaintiff's attorney, the defendant's former attorney and the attorney for the minor child each hold mortgages on one or both of the properties to secure payment of their fees. The court ordered that the parties would "be responsible solely for the debts set forth on their respective financial affidavits" and "their own counsel

---

[3] The defendant claims that the court abused its discretion in failing to invoke the provisions of General Statutes § 46b-84 (e) in regard to insurance reimbursement for services provided to the parties' children. Subsequent to oral argument, we asked the trial court the following pertinent question: "Did the court intend for the provisions of General Statutes § 46b-84 (e) to apply with regards to reimbursement from the children's health insurance provider for medical expenses paid by the parties?" On December 2, 2010, the court responded: "Yes, the provisions of General Statutes § 46b-84 (e) apply with regard to any reimbursement from the children's health insurance provider for medical expenses paid by the parties." Because the court's judgment has been clarified to address the defendant's concern regarding this issue, we need not address this claim on appeal.

fees."[4] Further, the court ordered that the defendant keep her own pension plan but that the plaintiff's pen-

[4] The defendant claims that the court should have "clarified and/or articulated orders concerning payment of counsel fees and orders concerning payment of closing expenses to effectuate proper compliance with the court's intended judgment . . . ." We agree. In light of the significant amount of counsel fees billed by the parties' attorneys and the confusion surrounding the court's decision regarding the payment of these fees, we ordered the court to articulate: "With regard to the division of real property, and specifically concerning the court's division of equity with the plaintiff to receive 35 [percent] and the defendant 65 [percent], did the court intend for the encumbrances placed on the land records by each parties' respective attorneys, as well as the encumbrance filed by the attorney for the minor children, to be paid first from the gross proceeds of sale of each property or did the court intend that only the plaintiff's share of the equity resulting from the judgment should be available to satisfy his separate attorney's fees and only the defendant's share of the equity resulting from the judgment should be available to satisfy her separate attorney's fees. As to fees for counsel for the minor children and for the children's guardian ad litem, did the court make any finding as to the reasonableness of the fees assessed by either counsel or the guardian? If so, what amounts did the court determine to be fair and reasonable?"

On December 2, 2010, the court responded: "To the extent any encumbrance was filed by the parties' respective attorney, each party's attorney [is] to be paid from each party's respective interest [in the real property]. Thus, the plaintiff's attorney(s) is/are to be paid from the plaintiff's 35 [percent] share of the equity and the defendant's attorney(s) is/are to be paid from the defendant's 65 [percent] share of the equity in both properties. The guardian ad litem and the attorney for the children are to be paid equally by both of the parties and these fees shall be paid first from the gross proceeds of each property. No title search or listing of encumbrances on either the Connecticut property or the Florida property was either submitted as evidence or testimony offered.

"The court makes a finding that the children's guardian ad litem's fees and the attorney for the minor children's fees were reasonable. Those fees were for guardian ad litem $175,691.2[4] as of June 23, 2009 and for the attorney for the minor children $8800 as of June 25, 2009." We note that it appears that the court mistakenly juxtaposed the amounts incurred by the guardian ad litem and the attorney for the minor child; the attorney for the minor children billed fees in the amount of $175,691.24, and the guardian ad litem's fees were $8800.

The defendant claims that her share of the proceeds from the sale of the real properties should not be reduced by the plaintiff's counsel fees. Because the court clarified its judgment to confirm that the plaintiff's counsel fees shall be paid from his share of the proceeds, we need not address the plaintiff's claim further.

sion plans be divided equally between the parties.[5] The court ordered that a QDRO be prepared to effectuate its order. This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth our well established standard of review. "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found

[5] The defendant also claims that the court's order with respect to the parties' pension plans is "impossibly unclear." We agreed, and, pursuant to our inherent supervisory authority and Practice Book § 60-2 (1), ordered the court to answer the following questions regarding the pension plans:

"[2] a. Did the court determine that the plaintiff has one or more defined benefit pension plans through his employer?

"b. If so, please state whether the court's judgment intends for the defendant to share one half the benefit to which the plaintiff is entitled pursuant to any such plan or plans. And, if so, please state whether the court's judgment intends for the defendant to share one half of the amount of benefit that had accrued to the plaintiff at the time of the marital dissolution judgment or one half the benefit to which the plaintiff may be entitled upon his retirement or retirement eligibility.

"c. Did the court determine that the plaintiff had one or more defined contribution plans through his employment?

"d. If so, please state the date on which the defendant is entitled to realize her entitlement to her portion of that plan(s).

"e. As to any such defined contribution plan(s) did the court intend to include the plaintiff's 401k plan as part of its pension plan award, and, if so, what amount did the court intend for the defendant to receive and what did the court intend to be the date of division of the plaintiff's?"

On November 30, 2010, the court responded as follows:

"2. [a] Based upon the only evidence provided, the plaintiff's financial affidavit, it was determined that there were two such plans.

"[b] Yes, and the defendant is to share one half the value of such plans at the time of the dissolution of marriage and to receive such share at the earliest time it may be distributed under that plan.

"[c] See (a) above.

"[d] See (b) above."

In light of the court's clarification of its pension order, there is no issue for us to address on appeal in this regard. We are aware of no impediment preventing either party from submitting an appropriate QDRO to the court for its approval and enforcement in accordance with the parameters articulated by the court in its clarified judgment.

that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Utz* v. *Utz*, 112 Conn. App. 631, 634, 963 A.2d 1049, cert. denied, 291 Conn. 908, 969 A.2d 173 (2009). With this in mind, we turn to the defendant's claims on appeal.

I

The defendant contends that the court should have ordered that the minor child with special needs continue to receive treatment in the New York City area or, in the alternative, that the court should have awarded the Florida home to her so that she could return there with the children where the special needs child could receive more affordable services. One of the major issues in the dissolution proceedings was whether the child would continue to attend the Eagle Hill School where, as the trial court pointed out, he has "flourished." The trial court ordered that the child would remain at that school until June, 2010. Although not explicit in the court's decision, we can infer, based on the fact that the court, in a colloquy with counsel,

commented that there was an outstanding arrearage due to the school at the time of the dissolution judgment, that the court determined that the parties could no longer afford to send the child to that school.[6] Such an inference is supported by the record. Additionally, the court's order that the Florida property be sold reflects the court's determination that such a sale was necessary to effectuate a reasonable and equitable division of the parties' assets.[7] The defendant has not cited anything in the record to the contrary. Accordingly, we cannot conclude that the court abused its discretion in this regard.

## II

The defendant also claims that the court failed to allocate expenses for the special needs child in violation of the child support guidelines. In its memorandum of decision, the court explicitly stated that it considered General Statutes § 46b-1 et seq., in rendering its judgment. The court also stated: "The [defendant], as physical custodian of the minor children and with one child who requires additional care will require a significant expenditure of funds." On that basis, the court issued its unallocated alimony and support order. Because the court specifically cited the special needs of one of the children when it fashioned its support order, the defendant's claim that it failed to consider that factor is without merit.

## III

The defendant also claims that the court improperly ordered the parties to share equally the fees incurred

[6] While many of the defendant's claims arise from her concern that the court's judgment did not ensure that the minor child would be able to complete his education at Eagle Hill School, the attorney for the minor child apparently did not share that concern as, in her brief to this court, she simply claimed that the defendant did not adequately brief her claims on appeal, and she raised no separate claims regarding the children's needs.

[7] We note that the dissolution judgment does not preclude the defendant from relocating to seek more affordable services for the child.

by the guardian ad litem and the attorney for their minor children. The defendant asserts that the court should have ordered the plaintiff to pay 90 percent of those fees because his bizarre and litigious behavior was the cause of the bulk of the fees charged.[8] We are not persuaded.

"The statutory authority for the award of counsel fees is found in General Statutes § 46b-62. Section 46b-62 provides in relevant part: If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney. . . . The court may order either party to pay the fees . . . pursuant to . . . § 46b-62, and how such expenses will be paid is within the court's discretion. . . . An abuse of discretion in granting . . . fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did. . . .

"The order for payment of . . . fees under . . . § 46b-62 requires consideration of the financial resources of both parties and the criteria set forth in . . . § 46b-82. . . . Section 46b-82 instructs the court to consider, inter alia, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. . . . Although the trial court is not required to find expressly on each of the § 46b-82 factors, it must have sufficient evidence to support each factor." (Citation omitted; internal quotation marks omitted.) *Utz* v. *Utz*, supra, 112 Conn. App. 640–41.

---

[8] We note that the defendant does not make a separate claim regarding the patently extraordinary award of counsel fees in this matter. Because of the absence of any such claim, the propriety of the court's award in this regard is not subject to our review.

Here, the defendant was awarded sole custody of the minor children, presumably due to the plaintiff's poor relationship with his children, which may have led to the incurrence of counsel fees for the children. The court was not, however, restricted to that factor in considering the allocation of responsibility for those fees. The record provides ample evidence of the parties' financial circumstances to support an equal division of those fees. Accordingly, we cannot conclude that the court abused its discretion in this regard.

## IV

The defendant also claims that the court improperly failed to incorporate the pendente lite support arrearage in its final judgment of dissolution. Specifically, the defendant contends that the court should have incorporated into the dissolution judgment the pendente lite support arrearage of $7500 found by the court on October 22, 2008.[9] We agree.

"[L]ike unpaid installments of an alimony award entered at the time of dissolution, accrued and unpaid installments of alimony [or child support] pendente lite are, in effect, debts which have become vested rights of property which the court cannot take away. . . . [W]here a final decree of divorce has been rendered, any orders regarding pendente lite alimony are merged in the final decree and thereafter, no independent action for contempt based on the temporary alimony order can be properly brought. Review may be made, however, of that part of a final order which fails to . . . incorporate an accumulated arrearage of pendente lite alimony. . . . Indeed, it would be error for a trial court . . . to

[9] The defendant also contends that the court should have entered an order reinforcing the pendente lite order that the plaintiff return all items that he had removed from her safety deposit box. Because the defendant does not refer to the date of the pendente lite order at issue, and because she has not indicated which items have or have not been returned to her, we deem her brief inadequate in this regard and, accordingly, decline to review it.

fail to incorporate an accumulated arrearage of pendente lite alimony in a final order granting dissolution. . . .

"[A] trial court's order, entered at the time of dissolution, forgiving a previously determined arrearage of pendente lite alimony [or child support], constitute[s] a retroactive modification of the pendente lite order. . . . [S]uch a modification, when made at the time of dissolution, is impermissible pursuant to General Statutes § 46b-86,[10] which permits retroactive modification of alimony and support orders only during the predissolution period and only pursuant to a pending motion to modify. . . .[11] [T]he purpose of alimony pendente lite is to provide a party with support during the pendency of the dissolution action. . . . Allowing a court to modify an award of alimony pendente lite retroactively at the time the dissolution is granted would frustrate that purpose because it would encourage spouses to delay making their alimony payments until the time of dissolution, hoping that the order for alimony pendente lite would be forgiven or changed at that time." (Citations omitted; internal quotation marks omitted.) *Evans* v. *Taylor*, 67 Conn. App. 108, 116–17, 786 A.2d 525 (2001).

Here, as in *Evans*, "although the court did not expressly forgive the arrearage of pendente lite support, it failed to include the arrearage in its judgment dissolving the marriage. . . . [T]hat failure to include an arrearage in a final order of dissolution has the same

[10] General Statutes § 46b-86 provides in relevant part: "(a) . . . No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party . . . ."

[11] "The prohibition against retroactive modification of alimony or support orders applies with equal force to pendente lite orders." *Evans* v. *Taylor*, 67 Conn. App. 108, 117 n.4, 786 A.2d 525 (2001).

effect on the party entitled to the pendente lite arrearage as it would have had if the court had expressly modified or forgiven the pendente lite order at the time of dissolution; it strips that party of a vested property right and constitutes an impermissible retroactive modification of the pendente lite orders in violation of § 46b-86. Even if it is assumed that the defendant was not stripped of a vested property right because she could again return to court and seek a judgment in the amount of the arrearage in an independent separate action, judicial economy concerns should prevail. It was improper for the court to omit the pendente lite arrearage in its final judgment of dissolution even though the defendant may not have specifically requested that in her claims for relief." Id., 117–18. Thus, the matter must be remanded for a determination of the amount of the pendente lite arrearage to be included in the judgment, along with an appropriate order for its payment.[12]

"We previously have characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Accordingly, when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . We also have stated, however, that [e]very improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order

[12] Although the dissolution judgment provided for $5000 per month, versus $7500 per month, as unallocated alimony and support, the dissolution judgment does not act as a retroactive modification of the pendente lite orders. See *Evans* v. *Taylor*, supra, 67 Conn. App. 118–19.

is severable if its impropriety does not place the correctness of the other orders in question." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 389–90, 999 A.2d 721 (2010).

We conclude that any order regarding support arrearages owed by the plaintiff does not relate to the other financial orders issued by the court, nor is it interdependent with those orders. Because such an order is unrelated to the other financial orders issued by the court, any determination of such an arrearage will not necessitate reconsideration of all of the court's financial orders.

The judgment is reversed only insofar as it fails to include the arrearage of pendente lite support and the case is remanded for further proceedings to determine the amount of pendente lite support arrearage to be included in the judgment. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.