# SANDY D. MCRAE *v.* SCOTT A. MCRAE
## (AC 33889)

DiPentima, C. J., and Lavine and Bear, Js.

Argued September 21—officially released November 6, 2012

*Matthew J. O'Keefe,* with whom, on the brief, was *Joseph M. Busher, Jr.,* for the appellant (plaintiff).

*Scott A. McRae,* pro se, the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Sandy D. McRae, appeals from the judgment of the trial court, *Hon. Herbert Barall,* judge trial referee, granting the motion of the defendant, Scott A. McRae, to modify periodic alimony payable to the plaintiff. On appeal, the plaintiff claims that the trial court improperly (1) based its decision on the defendant's present earnings rather than his earning capacity, (2) modified alimony despite the defendant's failure to proffer evidence of a substantial change in circumstances, (3) failed to maintain a parity of income and (4) lowered the defendant's weekly alimony payments predicated on the ordered arrearage payments. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the issues on appeal. On October 5, 2009, the court, *Hon. John R. Caruso,* judge trial referee, rendered judgment dissolving the marriage of the parties. The court valued the defendant's business at $144,000, but had considerable difficulty valuing the plaintiff's business because she did some of her business in cash and through bartering. The court stated that it was dividing the parties' total assets equally. The court made a finding, on the basis of the evidence presented, that the plaintiff had

an annual earning capacity of $50,000, and the defendant had an annual earning capacity of $100,000. The court ruled that alimony was to be modifiable as to amount because it was unsure of how successful either business would be, and it explained that if there was a substantial change in the circumstances of either party, a motion for modification could be filed. The court ordered the defendant to pay to the plaintiff the sum of $500 per week for the first three years following the judgment of dissolution and, thereafter, to pay $250 per week for the following seven years. The court also explained that it recognized that the defendant's annual "income [was] a moving target but [that] the orders that [it was] entering [were] based upon [$50,000 and $100,000]. If they differ substantially then within that ten year frame [then] the orders are modifiable if there's a substantial change." The court also stated: "By the way, if you look at the numbers for the first three years [of alimony] assuming nothing changes . . . you have parity of income. . . . I don't normally do that . . . ."

The defendant's attorney asked Judge Caruso for clarification regarding the alimony amount because the defendant expected to earn only $65,000 in 2009. The court stated that if the defendant's earning capacity turned out to be other than $100,000, counsel could seek a modification.[1] Following the court's judgment of dissolution on October 5, 2009, the defendant filed a motion to modify alimony on October 8, 2009. The court ruled on this motion, and others, on March 24, 2010, denying, inter alia, the requested modification that that court stated had been filed only "*three days*" after judgment. (Emphasis in original.) Shortly thereafter, on March 29, 2010, the defendant filed another motion to modify. That motion was not ruled on by the court. On April 25, 2011, the defendant filed another motion to

---

[1] The court's financial orders were upheld on appeal. See *McRae* v. *McRae*, 129 Conn. App. 171, 20 A.3d 1255 (2011).

modify, claiming that his financial situation had deteriorated further.

Following six days of hearings on the defendant's motion to modify, as well as on other motions that are not the subject of this appeal, Judge Barall issued a decision granting the motion to modify. The court explained: "Judge Caruso actually found Mr. McRae had an earning capacity of $100,000 and he had—and he found that Mrs. McRae had an earning capacity of [$50,000].[2] He also had a clause in there that [if] that wasn't the earning capacity . . . the parties could . . . come to court and seek to modify it. He also found the [defendant's] business worth about $145,000. I have—always have [been] leery if that was the value, just from my accounting background . . . . But . . . I think he was talking more about the capacity [to] earn and your capacity to earn.

"Well, reality set in, according to both of your last affidavits. And I'm going on the basis of the affidavits, but also on the basis of your income tax returns for the year 2010. And, essentially, I find that, Mr. McRae, yours is closer to $50,000, and yours [Mrs. McRae] is closer to $20,000. That's a substantial difference. And so I am going to modify the order . . . effective to the last filing of the motion to modify . . . ."

The court then ordered alimony reduced to $75 per week and it ordered the defendant also to pay $75 per week on the arrearage that had accumulated. The court stated that the defendant had been paying the plaintiff approximately $150 per week for quite some time and that this was a reasonable amount based on the defendant's net income of approximately $600 per week. The court ended its decision by explaining: "That's the decision of the court. As I said, I don't expect anybody to

[2] Judge Barall originally misstated that the plaintiff's earning capacity had been found to be $75,000, but he later corrected this misstatement.

be 100 percent happy [with] that, but nobody's happy earning the amounts of money that they're earning and obviously did earn. And, basically, I looked at the taxes for last year. That's a whole year. You know, you can have ups and downs, but neither party was receiving any income anywhere near [what] was predicted. So much for predictions. I will tell you, this court, certainly in the last year and a half, has made no decisions finding people's earning capacity. There was a time when I could pretty well predict what a person's capacity was, based upon their skills and the economy. We can't even—who knows what's happening with the stock market today; it may be down or up and the yo-yo will go up and down for some time. So, I wish you both luck."

Following the court's decision, the plaintiff, on August 15, 2011, filed a motion to reargue, claiming that the court had failed to find a substantial change in circumstances to warrant a modification of alimony and that the court failed to maintain a parity of income as anticipated by the dissolution judgment. Judge Barall denied that motion on September 8, 2011, explaining that after he had examined the parties' tax returns and their testimony, he found that there had been a substantial change in circumstances because neither party was earning anything close to what Judge Caruso had projected to be their earning capacity. This appeal followed.

I

On appeal, the plaintiff first claims that the trial court improperly based its decision to modify alimony on the defendant's present earnings rather than his earning capacity, which was the measure utilized by the dissolution court. Essentially, the plaintiff argues that the court failed to find a substantial change in circumstances, and, instead, simply utilized a different measure to

determine alimony, namely, the defendant's current earnings rather than his earning capacity. We are not persuaded.[3]

We review the court's judgment granting a motion to modify alimony payments under an abuse of discretion standard. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 372, 999 A.2d 721 (2010).

"To obtain a modification [of alimony], the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion only includes the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties." (Internal quotation marks omitted.) *Bruno* v.

[3] Because we are not persuaded that Judge Barall did not consider the parties' earning capacity when rendering his decision on the defendant's motion to modify, we need not determine whether he necessarily had to use earning capacity as the proper measure when determining whether there had been a substantial change in circumstances.

*Bruno*, 132 Conn. App. 339, 345–46, 31 A.3d 860 (2011), quoting *Borkowski* v. *Borkowski*, 228 Conn. 729, 737–38, 638 A.2d 1060 (1994).

The plaintiff argues that the court "erred in this case by applying the wrong legal standard. Rather than applying the test from the October 5, 2009 dissolution judgment with regard to earning capacity, Judge Barall simply stated that over the preceding several years he has decided not to use this standard and therefore decided the case based upon present, reported earnings." We are not persuaded.

In considering the defendant's motion to modify alimony, Judge Barall conducted six days of hearings, heard substantial testimony and received many exhibits. He stated that he took into consideration the evidence presented and concluded that there had been a substantial change in circumstances. Specifically, Judge Barall explained: "Judge Caruso actually found Mr. McRae had an earning capacity of $100,000 and he . . . found that Mrs. McRae had an earning capacity of [$50,000].[4] He also had a clause in there that [if] that wasn't the earning capacity . . . the parties could . . . come to court and seek to modify it. . . . Well, reality set in, according to both of your last affidavits. And I'm going on the basis of the affidavits, but also on the basis of your income tax returns for the year 2010. And, essentially, I find that, Mr. McRae, yours is closer to $50,000, and yours [Mrs. McRae], is closer to $20,000. That's a substantial difference. And so I am going to modify the order, effective to the last filing of the motion to modify . . . ."

After reviewing the court's decision, we conclude, on the basis of the preceding language, that the court reviewed the decision of the dissolution court, set forth the findings of the dissolution court as to the parties'

[4] See footnote 3 of this opinion.

earning capacities at the time of the dissolution and then concluded that the parties' earning capacities were significantly lower than that set forth by Judge Caruso. Accordingly, after reviewing the court's decision, we are not persuaded by the plaintiff's contention that, when considering whether there had been a substantial change in circumstances, the court used an improper standard by failing to consider the parties' current earning capacities as compared to their previous earning capacities as determined by the dissolution court.

## II

The plaintiff claims that the court improperly modified the defendant's alimony obligation despite the defendant's failure to proffer evidence of a substantial change in circumstances. We are not persuaded.

"General Statutes § 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . Alimony decrees may only be modified upon proof that relevant circumstances have changed since the original decree was granted. . . . In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They have chiefly to do with the needs and financial resources of the parties. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it.

Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential." (Internal quotation marks omitted.) *Bruno* v. *Bruno*, supra, 132 Conn. App. 345–46, quoting *Borkowski* v. *Borkowski*, supra, 228 Conn. 734–38.

The plaintiff argues that there was no evidence of a substantial change in circumstances because "[t]he defendant's [current] financial affidavit showed no change from the 2009 financial affidavit considered by Judge Caruso." On the one hand, the plaintiff argues that the court did not use the parties' earning capacities to determine whether there had been a substantial change in circumstances, but, on the other hand, she argues that the court did not compare current financial affidavits with previous financial affidavits, thereby looking at earnings rather than earning capacity. Although we agree that the evidence shows no significant change in the defendant's actual income, as we concluded in part I of this opinion, the court found a substantial change in the parties' earning capacities, not in their actual incomes. Accordingly, we conclude that there is no merit to this claim.

### III

The plaintiff also claims that the court improperly failed to maintain a parity of income. She argues that the dissolution court designed its financial package so that the income of the parties was in parity. She contends that Judge Barall was required to assure that the parties' incomes remained in parity. We conclude that the court was not required to maintain a parity of income in setting forth a modified alimony award.

"[O]nce a party has met his or her burden under either § 46b-86 (a) or (b), the court then should apply

the factors of [General Statutes] § 46b-82 to fashion a new alimony award.[5] . . . [O]nce [a change in circumstances has been proven under either § 46b-86 (a) or (b)] a uniform application of the § 46b-82 factors is warranted and should be applied to a request for a postdissolution modification of alimony whether brought under either subsection . . . . In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. . . . More specifically, these criteria, outlined in . . . § 46b-82, require the court to consider the needs and financial resources of each of the parties and their children, as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties. . . . Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification." (Citation omitted; internal quotation marks omitted.) *Dan* v. *Dan*, 137 Conn. App. 728, 732–33, 49 A.3d 298 (2012).

Here, the plaintiff claims only that Judge Barall was required to maintain a parity of income because the dissolution court had entered an alimony order resulting in a parity of income based on the amounts it determined to be the parties' earning capacities. She makes no claim that the court failed to apply the § 46b-82 factors when modifying the defendant's alimony obligation. Because our law clearly requires the court to

[5] General Statutes § 46b-82 (a) requires in relevant part that the court "consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

apply the factors set forth in § 46b-82 when determining the modified amount of alimony; see id.; *Borkowski* v. *Borkowski,* supra, 228 Conn. 736–37; *Schwarz* v. *Schwarz,* 124 Conn. App. 472, 484–85, 5 A.3d 548, cert. denied, 299 Conn. 909, 10 A.3d 525 (2010); and there is no claim that the court failed to do so in this case, we find no merit to the plaintiff's claim that the court was required to maintain a parity of income for the remainder of the initial three year period after finding a substantial change in circumstances warranting a modification of alimony. Such a mandatory requirement would be inconsistent with the clear dictates of our law.

IV

The plaintiff's final claim is that the court improperly lowered the defendant's weekly alimony payments predicated on the ordered arrearage payments.[6] She argues that "reducing current alimony obligations to take into account the defendant's arrearage has the same effect as simply eliminating the arrearage and thus has the same effect as expressly forgiving the arrearage." The defendant argues that the plaintiff is "purport[ing] to read Judge Barall's mind as to how he predicated his alimony award." He argues: "Judge Barall . . . concluded alimony should be $75 per week. Separately, Judge Barall noted that a $75 payment on the arrearage would pay off the arrearage in seven plus years, and 'essentially, will be what [the defendant] has [been] paying for some time, about $150 per week.' . . . When one considers that the arrearage amount . . . was approximately $29,000, then 7.5 years of payment at $75 per week equals $29,250. This is clearly separate from Judge Barall's determination of weekly alimony." (Citation omitted.) We agree with the defendant.

---

[6] The plaintiff does not claim that an alimony award of $75 per week in this case was an abuse of the court's discretion.

"Retroactive modifications of support orders are ordinarily impermissible. . . . With the exception of the period following service of a motion for modification, [n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification . . . ." (Citation omitted; internal quotation marks omitted.) *Favrow* v. *Vargas*, 231 Conn. 1, 40–41, 647 A.2d 731 (1994). "The power of the trial court to modify orders of support and alimony is . . . a creature of statute. General Statutes § 46b-86. Nothing in our statute regarding modification of alimony and support can be construed as authorizing retroactive modification. Such a construction has been expressly disavowed by our Supreme Court." *Trella* v. *Trella*, 24 Conn. App. 219, 221, 587 A.2d 162, cert. denied, 219 Conn. 902, 593 A.2d 132 (1991). Simply stated, "alimony already accrued may not be modified." (Internal quotation marks omitted.) *Mihalyak* v. *Mihalyak*, 30 Conn. App. 516, 520, 620 A.2d 1327 (1993).

Recognizing that orders for alimony cannot be modified retroactively, with an exception for that period following service of a proper motion, we must determine whether the action taken by the court in this case amounts to a retroactive modification. In making her claim, the plaintiff primarily relies on this court's decisions in *Clark* v. *Clark*, 127 Conn. App. 148, 13 A.3d 682, cert. denied, 301 Conn. 914, 19 A.3d 1260 (2011), and *Evans* v. *Taylor*, 67 Conn. App. 108, 786 A.2d 525 (2001). In both of these cases, this court stated that the "failure to include an arrearage in a final order of dissolution has the same effect on the party entitled to the pendente lite arrearage as it would have had if the court had expressly modified or forgiven the pendente lite order at the time of dissolution; it strips that party of a vested property right and constitutes an impermissible retroactive modification of the pendente lite orders in violation of § 46b-86." *Clark* v. *Clark*, supra, 158–59,

quoting *Evans* v. *Taylor*, supra, 117–18. The plaintiff contends, on the basis of these cases, that "even when there is no express forgiveness or modification of an arrearage, the failure to adequately address the arrearage in a court order may well constitute an improper and unauthorized retroactive modification of alimony." Although we agree with the plaintiff's contention based on the holdings of *Clark* and *Evans,* we are not persuaded that there was such a failure by the court in this case.

The plaintiff posits that the following statements by the court demonstrate that it lowered the defendant's alimony obligation so that the defendant's entire payment to the plaintiff would be $150 per week, thereby effectively eliminating the arrearage: "So, the $75 will be—essentially, will be what [the defendant] has been paying for some time, about $150 a week. And if that's—and assuming that he's earning about net after deductions about $600-and-something-plus per week, that's a reasonable amount to pay on that arrearage." The plaintiff also points to the following language in the court's decision on her motion to reargue: "The court found an arrearage but did not find the defendant in contempt for his failure to pay because of lack of capacity. The court entered an arrearage payment so that the defendant would pay $150 per week in total for both the alimony and the arrearage payment. This leaves the parties in a comparable position considering both of their incomes." We are not persuaded that the record evinces an improper retroactive modification of alimony by the court.

In addition to the language relied on by the plaintiff, in determining the specific payments for alimony and the defendant's arrearage, the court also stated: "And so what I'm going to be doing, essentially, is I'm going to reduce alimony to $75 per week. I'm [also] going to order $75 per week on the arrearage. It will take about

seven years to pay that arrearage."[7] The court then ordered alimony reduced to $75 per week, and it ordered the defendant also to pay $75 per week on the arrearage, thus demonstrating that the court specifically considered the modified alimony amount and the arrearage payment amount separately. On this basis, we are unable to conclude that the court committed error by improperly issuing an order that, effectively, modified alimony retroactively.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] "The court . . . has discretion respecting the manner in which [an] arrearage shall be paid. This would not preclude the court, at any time, if the plaintiff's financial circumstances were to change, from making appropriate adjustments in the amount and manner of payment. The fact that hypothetically the court's installment order appears to stretch out the arrearage into the distant future does not convert a prospective order into a retroactive modification." *Moore* v. *Moore*, 187 Conn. 589, 590, 447 A.2d 733 (1982).

[8] We also note that the plaintiff did not raise this claim in the trial court prior to filing her appeal, nor did the plaintiff seek an articulation from the court after filing her appeal.