# SUSAN WINTERS *v.* BRUCE WINTERS
## (AC 33317)

Alvord, Bear and Flynn, Js.

Argued October 17, 2012—officially released February 19, 2013

*Susan Winters*, pro se, the appellant (plaintiff).

*Bruce Winters*, pro se, the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Susan Winters, appeals from the judgment of the trial court denying a postjudgment motion for modification of the child support and alimony payments owed to her by her former husband, the defendant, Bruce Winters. The plaintiff claims that the court improperly denied the motion for modification because it based its determination that there had not been a substantial change in circumstances on a flawed calculation of the defendant's available income.[1] We

---

[1] Included in the plaintiff's broader claim that the defendant's financial resources were calculated improperly are several specific claims. First, the plaintiff contends that the court made a clearly erroneous statement of fact concerning the defendant's weekly expenses. In accordance with this court's order, the trial court issued an articulation, which stated that the defendant had expenses amounting to $3000 per *month*, whereas the record clearly reflects that he had expenses of $3000 per *week*. After the plaintiff raised this issue on appeal, the defendant filed a motion for rectification, seeking to clarify the error. The trial court issued an order correcting the error. Because the error has been corrected, we need not address it further.

Second, the plaintiff claims that the trial court erred when it relied, in its articulation, on an addendum to the defendant's financial affidavit because it was not submitted into evidence. As proof of this reliance, the plaintiff directs this court to the sentence in the trial court's articulation stating: "The defendant testified that he paid his expenses, approximately $3000 per

agree and, accordingly, reverse the judgment of the trial court.

The record discloses the following relevant information. The plaintiff and the defendant were divorced on August 25, 2009, after twenty-nine years of marriage. Before the divorce, the defendant worked as an information technology auditor, earning an annual salary of approximately $230,000. At the time of the divorce, the defendant's personal assets, minus his liabilities, totaled over one million dollars. The defendant was unemployed, however, and the trial court ordered him to pay only $1 per year in alimony and $55 per week in child support, pursuant to the application of the child support guidelines to his weekly unemployment income. Thereafter, the defendant filed a motion for modification of his weekly child support payment from $55 to $0, representing to the court that his unemployment compensation payments had ceased. In February, 2010, the court denied the defendant's motion; the amount of child and spousal support remains unchanged since the date of dissolution.

---

month, from his assets, and provided the court with an attachment to his financial affidavit listing $20,000 of cashed-in investments." The information used by the court in making this finding was in an addendum to a financial affidavit filed with the court on January 3, 2011. As such, it is part of the record the court can use to find fact, and relying on the properly filed affidavit was not erroneous. "[T]he financial affidavits and any other relevant documents that the parties filed at the time of the dissolution, as well as financial affidavits subsequently filed by the parties, are in the court's case file. The court may take judicial notice of the contents of that file." *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 175, 829 A.2d 885 (2003).

Third, the plaintiff claims that the court erroneously credited the defendant's testimony. "This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . We cannot retry the matter, nor can we pass on the credibility of a witness." (Citation omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878–79, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). We therefore accept the trial court's credibility determinations.

In the 2009 dissolution of marriage judgment, the court also ordered the defendant to maintain insurance coverage for the plaintiff and their son through December 31, 2011. At the time of the divorce, the defendant had health insurance through the Consolidated Omnibus Budget Reconciliation Act (COBRA); see Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 through 1168; and, as ordered, he maintained the plaintiff and their son on COBRA coverage as well. In February, 2010, the court granted the defendant's motion for modification of his medical insurance responsibility, allowing the defendant to remove his son from his COBRA coverage. The defendant and his son currently are insured through the state of Connecticut's low-income, public health insurance program, which is commonly referred to as the HUSKY Plan. See General Statutes §§ 17b-289 through 17b-303. The defendant remarried in October, 2010, and it is his position that he remains unable to find employment.

The plaintiff filed a postjudgment motion dated July 30, 2010, seeking to modify child and spousal support, arguing that there had been a substantial change in circumstances with regard to the defendant's earnings or finances. The court summarily denied the motion: "The court, on January 27 and 28, 2011, having listened to the testimony, considered the evidence, and taken into account all statutory authority, finds that there has been no substantial change in circumstances. Accordingly, the motion is denied." The plaintiff filed a motion to reargue, which the court denied on the papers. The plaintiff then filed a motion for review with this court, and, pursuant to that motion, this court ordered the trial court to articulate the factual and legal basis of its conclusion that there had been no substantial change in circumstances. Specifically, this court ordered the trial court to articulate (1) what income was attributed

to the defendant since the date of the parties' dissolution, and (2) how the court categorized the funds received by the defendant from his new wife.

In its articulation pursuant to this court's order, the trial court found the following facts. "The defendant testified that he had done some consulting work post-divorce but had no other source of income. The defendant testified that he was actively seeking employment, but, to date, had been unsuccessful. The plaintiff provided no credible evidence to the contrary. . . .

"The defendant testified that he paid his expenses, approximately $3000 per [week],[2] from his assets, and provided the court with an attachment to his financial affidavit listing $20,000 of cashed-in investments. . . . The plaintiff argued that the defendant's assets increased and that was evidence of unreported income. . . . The plaintiff provided no evidence of fraud.

"The plaintiff also argued that the funds received by the defendant from his new wife were gifts and should be included as income. The defendant testified that he borrowed just under $49,000 from his new wife for payment of living expenses. The defendant listed the debt on the attachment to his financial affidavit provided to the court.[3] The defendant provided credible evidence of bona fide loans. The plaintiff provided no specific, credible evidence on which the court could conclude that the funds provided to the defendant were gifts, not loans. . . .

"The court was presented with credible evidence from the defendant and determined that the conventional methods for determining the defendant's income

---

[2] See footnote 1 of this opinion.

[3] The front page of the defendant's January 3, 2011 financial affidavit attested to a liability of $48,992.84 owed to "K. Grygier/Winters," the defendant's new wife. The attachment to this affidavit provided a list of the defendant's "income/deposits" in 2010, derived from: the defendant's new wife, wedding gifts, consulting income, interest income and unemployment compensation.

were adequate. The plaintiff did not present specific, credible evidence showing that the defendant had increased income, but merely speculated that the defendant had unreported income." (Citations omitted; internal quotation marks omitted.)

Having set forth both the undisputed facts and those facts found by the trial court, we turn to a review of the relevant law and legal claims. "Our standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Milazzo-Panico* v. *Panico,* 103 Conn. App. 464, 467–68, 929 A.2d 351 (2007).

"General Statutes § 46b-86[4] governs the modification or termination of an alimony or support order after the

---

[4] General Statutes § 46b-86 provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . . "

date of a dissolution judgment. . . . In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award . . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential." (Internal quotation marks omitted.) *McRae* v. *McRae*, 139 Conn. App. 75, 82–83, 54 A.3d 1049 (2012).

The trial court concluded that there had been no substantial change in circumstances. This determination was based, in part, on the court's finding that the money the defendant had received from his new wife was a loan. The court's articulation stated: "The plaintiff also argued that the funds received by the defendant from his new wife were gifts and should be included as income. The defendant testified that he borrowed just under $49,000 from his new wife for payment of living expenses. The defendant listed the debt on the attachment to his financial affidavit provided to the court. The defendant provided credible evidence of bona fide loans. The plaintiff provided no specific, credible evidence on which the court could conclude that the funds provided to the defendant were gifts, not loans." The determination that $49,000 was transferred from the defendant's new wife to the defendant in the form of loans is a finding of fact, and, as it is based on the defendant's testimony and his January 3, 2011 financial affidavit, it has support in the record. The trial court is afforded great deference in determining the credibility of a witness in the fact finding process, and,

throughout its articulation, it credited the testimony of the defendant.[5]

The record also reveals, however, that the defendant received recurring monetary gifts from his new wife.[6] While a spouse's regularly recurring gifts generally may not be used in the calculation of child support, there is a regulatory exception that is potentially applicable to the facts of this case. See Regs., Conn. State Agencies § 46b-215a-3 (b) (1) (D).[7] The distinction between money received as a gift or as a loan informs whether a substantial change in circumstances occurred in the present case. In finding that the plaintiff did not provide "specific, credible evidence on which the court could

[5] In its articulation, the court credited the defendant's testimony with regard to the following facts: he had done consulting work after the divorce; he was actively seeking employment, but had been unsuccessful; he paid his monthly expenses from his assets; he "cashed-in" $20,000 worth of investments; and he borrowed $49,000 from his new wife in the form of loans for the payment of living expenses. The court did not discredit any of the defendant's testimony or information attested to in his financial affidavits in the articulation. Likewise, the court did not find the plaintiff credible.

[6] The following colloquy between the court and the defendant took place on January 27, 2010:

"The Court: What about the $12,000 check [dated] January 14th, 2010? Is that part of [money you would repay to your new wife]?

"[The Defendant]: No, it's not. That was—that should—she paid some of the bills, and I—at that point, she was just helping out and I was—

"The Court: So that's a gift.

"[The Defendant]: Yeah, that was a gift. That was part of just helping the house out."

[7] The child support and arrearage guideline regulations (regulations) state that "the income and regularly recurring contributions or gifts of a spouse or domestic partner" are excluded from the calculation of gross income for the purpose of determining child support payments. Regs., Conn. State Agencies § 46b-215a-1 (11) (B) (v). The regulations, however, also state that one of the factors that can be considered in deviating from presumptive support amounts is "the regularly recurring contributions or gifts of a spouse or domestic partner, but only if it is found that the parent has reduced his or her income or has experienced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts." Regs., Conn. State Agencies § 46b-215a-3 (b) (1) (D).

conclude that the funds provided to the defendant were gifts, not loans," the court disregarded its colloquy with the defendant wherein the defendant testified that the $94,000 he received from his new wife was in the form of *gifts*, loans and cash advances.[8] Likewise, the court overlooked a colloquy where the defendant testified that the check he received on January 14, 2010 was a gift[9] and a statement under oath where the defendant testified that, at the time of trial, he was receiving monetary gifts from his new wife.[10] Despite the defendant's repeated admissions that he received gifts from his new wife, and the court's expressed reliance on the defendant's testimony, the court concluded that there was no credible evidence the defendant received gifts from his new wife.

We are aware that we afford the trial court great deference in its factual findings and give every reasonable presumption in favor of its determination. See *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 507–508, 4 A.3d 288 (2010). In the present case, however, where the court consistently credited the defendant's testimony, and the defendant consistently

---

[8] The following colloquy regarding the transfer of money from the defendant's new wife to the defendant occurred when the defendant testified at trial on January 28, 2011:

"The Court: Between what you're claiming to be gifts, and loans, and cash advances, she gave you $94,000 last year.

"[The Defendant]: Correct. Correct. And—and I have all the sources that she gave me from . . . ."

[9] "[The Plaintiff's Attorney]: Okay. According to the detail section of this addendum here that you have, you see—show a check from [your new wife dated] January 14, 2010.

"[The Defendant]: Correct.

"[The Plaintiff's Attorney]: And you're saying that was a loan?

"[The Defendant]: No. That—that—that money she had given me, she had—she had helped pay some of our expenses."

[10] While on the witness stand, the defendant testified: "So I'm—I'm, you know—that—that's, you know, I think—and—and there won't be recurring gifts. I mean, [my new wife] doesn't have an unlimited fund that—but right now there are—there are gifts."

testified he received gifts from his new wife, a finding of fact that there was "no specific, credible evidence on which the court could conclude that the funds provided to the defendant were gifts, not loans" is inescapably incongruent. We are forced to conclude that this finding is clearly erroneous, as it directly contradicts testimony the trial court credited and relied upon in denying the plaintiff's motion.

The court's conclusion that no substantial change in circumstances had occurred also was based, in part, on the court's determination it could not consider the plaintiff's argument that the increase in the defendant's assets was evidence of unreported income.[11] Rather, the court summarily disregarded any inquiry into the defendant's assets, stating: " 'Only in cases of fraud can a modification be based on an increase in the value of assets.' *Simms* v. *Simms*, 25 Conn. App. 231, 234, 593 A.2d 161, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991). The plaintiff provided no evidence of fraud." Subsequent to the decision in *Simms* relied upon by the trial court, however, our Supreme Court stated: "The fact that capital gains on property distributed at dissolution may not be considered *income* under [General Statutes] § 46b-82 does not mean . . . that the court cannot consider a change in the value of that property in determining whether there has been a substantial change of circumstances justifying the modification of an alimony award [pursuant to § 46b-86]." (Emphasis in original.) *Gay* v. *Gay*, 266 Conn. 641, 648,

---

[11] The plaintiff's position that the defendant's assets have increased is supported by the trial court record. In the defendant's financial affidavit dated June 13, 2010, he lists $632,885 in assets and $0 in liabilities, revealing a net worth—subtraction of liabilities from assets—of $632,885. The defendant's financial affidavit dated January 3, 2011, shows $761,071.56 in assets and $48,992.84 in liabilities, revealing a net worth of $712,078.72. In less than seven months, the defendant, according to his own sworn financial affidavit, increased his net worth by nearly $80,000 while, according to his testimony, remaining unemployed.

835 A.2d 1 (2003). The fraud requirement noted in *Simms* is absent from the substantial change in circumstances analysis our Supreme Court set forth in *Gay*, which allows a court to consider the change in the value of an asset. Pursuant to *Gay*, a court need not find fraud in order to determine that an asset's change in value is a relevant factor in determining whether a substantial change in circumstances has occurred.

In the present case, the trial court had the discretion to assign the proper weight to evidence of the gifts the defendant received from his new wife in assessing whether a substantial change in circumstances had occurred, but the court did not exercise its discretion. "While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion . . . this presupposes that the trial court did in fact *exercise* its discretion. . . . Where . . . the trial court is properly called upon to exercise its discretion, its failure to do so is error." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State v. Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986). Instead of exercising its discretion, the trial court erroneously found that the defendant had not received any gifts from his new wife, and, on that basis, refused to consider how the $45,000 nonloan portion of the $94,000 the defendant received from his new wife in 2010 factored into a change of circumstances analysis. Further, the trial court had the discretion to assign the proper weight to evidence of an $80,000 increase in the defendant's assets from June, 2010, to January, 2011, but the court did not exercise its discretion. Instead, it summarily dismissed all evidence of the defendant's increased assets by applying an incorrect legal standard from *Simms*.

The judgment is reversed and the case is remanded for a new hearing on the plaintiff's motion for modification of child and spousal support.

In this opinion the other judges concurred.